# EXHIBIT "A"

# NOTE

| | | |
|---|---|---|
| NOVEMBER 5, 2011 | West Conshohocken, | PENNSYLVANIA |
| [Date] | [City] | [State] |

12802 Galdi Lane, Philadelphia, PA 19154
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $188,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  ARRAY FINANCIAL GROUP, INC., A CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   4.375%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1ST     day of each month beginning on  DECEMBER 1, 2011. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    NOVEMBER 1, 2041,        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
200 FOUR FALLS CORP CNTR
W CONSHOHOCKEN, PA 19428

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.      $938.66.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.                         Page  1  of  3                                      F3200NOT  0701

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials:

LOAN #: 

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Jeanne Focht-Bhasin_ (Seal)
Jeanne Focht-Bhasin

PAY TO THE ORDER OF

WITHOUT RECOURSE

ARRAY FINANCIAL GROUP, INC.,
A CORPORATION

BY:_____

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.                    Page 3 of 3                    F3200NOT 0701

200 Four Falls Corporate Center, Suite 107
West Conshohocken, Pennsylvania 19428
Office 610.567.1414 | Fax 610.567.1415
Toll Free 1.888.99ARRAY (27729)
NMLS# ████



**ARRAY**
FINANCIAL GROUP INC.
Mortgages • Purchases • Refinances

## ALLONGE

| | |
|---|---|
| **LOAN #:** | ████ |
| **Borrower(s):** | Jeanne Focht-Bhasin |
| **Property Address:** | 12802 Galdi Lane, Philadelphia, PA 19154 |
| **Principal Balance:** | $188,000.00 |
| **Note Date:** | November 5, 2011 |

### PAY TO THE ORDER OF

### Bank of America, N.A.

**Without Recourse**

Company Name: **ARRAY FINANCIAL GROUP, INC.**

By: _Jeffrey M. Ruben_  _____ Title _____

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY: _Sean Headley_
SEAN HEADLEY
ASSISTANT VICE PRESIDENT

Multistate Note Allonge

# EXHIBIT "B"

eRecorded in Philadelphia PA   Doc Id: 52411806
11/14/2011 09:14AM        Receipt#: ███
Page 1 of 17                     Rec Fee: $170.00
Commissioner of Records      Doc Code: M
State RTT:    Local RTT:

After Recording Return To:
ARRAY FINANCIAL GROUP, INC.
ATTN: FINAL DOCUMENT DEPARTMENT
200 FOUR FALLS CORP CNTR
W CONSHOHOCKEN, PA 19428

*Please re-record mortgage
to include "Legal Description
Attached Hereto and Made
a Part Hereof as Exhibit A"
                Array Financial Group, Inc.
        By  Jeffrey M. Ruben
        It's  President
        Signed: _____

APN #:
APN #:

LOAN # ███████        ————[Space Above This Line For Recording Data]————

# MORTGAGE

███████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 5, 2011,
together with all Riders to this document.

(B) "Borrower" is ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has
a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees
Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) "Lender" is ARRAY FINANCIAL GROUP, INC.

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.              Page  1  of 13        PAEDEED    PAEDEDL 1011



52424309
Page: 1 of 19
12/15/2011 12:23PM

This Document Recorded
12/15/2011
12:23PM
Doc Code: M___   Commissioner of Records, City of Philadelphia

Doc Id: 52424309
Receipt #: ███
Rec Fee: 170.00

LOAN #: ▮▮▮▮▮▮▮▮

Lender is a **CORPORATION**                         organized and existing under the
laws of **PENNSYLVANIA**.                            Lender's address is
**200 FOUR FALLS CORP CNTR, W CONSHOHOCKEN, PA 19428.**

(E) **"Note"** means the promissory note signed by Borrower and dated **NOVEMBER 5, 2011.**
The Note states that Borrower owes Lender *****ONE HUNDRED EIGHTY EIGHT THOUSAND AND
NO/100***********************************************Dollars (U.S.      **$188,000.00**      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
in full not later than   **NOVEMBER 1, 2041.**
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ V.A. Rider | | |

(I)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section
5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part
of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as
to, the value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As
used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed
in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related
mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether
or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _(handwritten initials)_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT Form 3039 1/01**
Online Documents, Inc.                      **Page  2  of  13**                      PAEDEDL  1011

LOAN #: ▇▇▇▇▇▇▇

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the   **COUNTY**
[Type of Recording Jurisdiction] of **Philadelphia**                                        [Name of Recording Jurisdiction]:

**Legal Description Attached Hereto and Made
A Part Hereof as Exhibit A**

which currently has the address of **12802 Galdi Lane, Philadelphia,**

[Street] [City]

Pennsylvania    **19154**              ("Property Address"):
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Initials: ▇▇▇▇

LOAN #:

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                           **Page  4  of  13**                        PAEDEDL  1011

LOAN #: ▉▉▉▉▉▉▉

by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                          **Page  5  of  13**                          PAEDEDL  1011

LOAN #:

services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    **Page   6   of   13**                    PAEDEDL   1011

LOAN #: ████████

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                          **Page   7   of   13**                          PAEDEDL  1011

LOAN #: ███████

a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page  8  of  13                          PA8DEDL  1011

LOAN #: ███████

by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend,

Initials: ███████

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page    9    of    13                    PAEDEDL    1011

LOAN #:

modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited

Initials:

PENNSYLVANIA–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01**
Online Documents, Inc.                          Page   10 of  13                          PAEBEDL  1011

LOAN #: ██████████

to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of

Initials: [signature]

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    **Page   11  of  13**                    PAEDEDL  1011

LOAN #:

acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and
opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those
substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law
and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic
pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where
the Property is located that relate to health, safety or environmental protection; (c) "Environmental
Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental
Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or
otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any
Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.
Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation
of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the
presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value
of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the
Property of small quantities of Hazardous Substances that are generally recognized to be appropriate
to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous
substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit
or other action by any governmental or regulatory agency or private party involving the Property and
any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any
Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat
of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release
of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is
notified by any governmental or regulatory authority, or any private party, that any removal or other
remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly
take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create
any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration
following Borrower's breach of any covenant or agreement in this Security Instrument (but not
prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall
notify Borrower of, among other things: (a) the default; (b) the action required to cure the default;
(c) when the default must be cured; and (d) that failure to cure the default as specified may result
in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding
and sale of the Property. Lender shall further inform Borrower of the right to reinstate after
acceleration and the right to assert in the foreclosure proceeding the non-existence of a default
or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as
specified, Lender at its option may require immediate payment in full of all sums secured by this
Security Instrument without further demand and may foreclose this Security Instrument by
judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the
remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title
evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security
Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender
shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender
may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party
for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error
or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any

Initials:

LOAN # ███████

present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Jeanne Focht-Bhasin_ (Seal)
Jeanne Focht-Bhasin

_Anil Bhasin_ (Seal)
Anil Bhasin

Commonwealth of PENNSYLVANIA
County of ~~PHILADELPHIA~~ Montgomery

On this, the 5th day of November 2011 before me, _____ Kristina K. George, the undersigned officer, personally appeared Jeanne Focht-Bhasin AND Anil Bhasin, known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My commission expires: 4/6/2015        Kristina K. George

Notary
Title of Officer

> **NOTARIAL SEAL**
> **KRISTINA K GEORGE**
> **Notary Public**
> **W. CONSHOHOCKEN BORO, MONTGOMERY CNTY**
> **My Commission Expires Apr 6, 2015**

Certificate of Residence

I, Kristina K. George
do hereby certify that the correct address of the within-named Mortgagee is 200 FOUR FALLS CORP CNTR, W CONSHOHOCKEN, PA 19428

Witness my hand this 5th day of November 2011

Kristina K. George
Agent of Mortgage

Commonwealth of Pennsylvania                SS.
County of Montgomery

On this the 21st day of November, 2011 before me, Kristina K. George
The undersigned officer, personally appeared            Jeffrey M. Ruben
who acknowledged himself to be the President of Array Financial Group, Inc. and that he, as such
President, being authorized so to do, executed the foregoing instrument for the purposes therein
contained, by signing the name of the corporation by himself as President.

In WITNESS my hand and official seal.

                                    _Kristi K. George_
                                    Notary Public

NOTARIAL SEAL
KRISTINA K GEORGE
Notary Public
W. CONSHOHOCKEN BORO, MONTGOMERY CNTY
My Commission Expires Apr 6, 2015

LOAN #: ▮▮▮▮▮▮

MIN: ▮▮▮▮▮▮

# PLANNED UNIT DEVELOPMENT RIDER

CASE #:

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      5TH      day of
NOVEMBER, 2011          and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to ARRAY FINANCIAL GROUP, INC., A CORPORATION

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at:   12802 Galdi Lane, Philadelphia, PA 19154.

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described
in  COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration").
The Property is a part of a planned unit development known as Liberty Square

(the "PUD"). The Property also includes Borrower's interest in the homeowners
association or equivalent entity owning or managing the common areas and facilities
of the PUD (the "Owners Association") and the uses, benefits and proceeds of
Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    **A.  PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;
(ii) articles of incorporation, trust instrument or any equivalent document which creates
the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.
    **B.  Property Insurance.** So long as the Owners Association maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the
Property which is satisfactory to Lender and which provides insurance coverage in the
amounts (including deductible levels), for the periods, and against loss by fire, hazards

Initials: _____

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
© 1999-2008 Online Documents, Inc.          **Page  1  of  3**          F3150RDU   F3150RLU  0802

LOAN #: ▇▇▇▇▇▇▇

included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
© 1999-2008 Online Documents, Inc.          **Page   2   of   3**                    F3150RLU  0802

LOAN #: ▓▓▓▓▓▓▓

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
Jeanne Focht-Bhasin

_____ (Seal)
Anil Bhasin

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
© 1999-2008 Online Documents, Inc.          **Page  3  of  3**                           F3150RLU  0802

EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania, bounded and described according to Plan entitled "As-Built Plan Liberty Square" made by Reuban Horlick Builders, Inc., dated 12/11/1989 as follows, to wit:

BEGINNING at a point in the dividing line between Lots 41 and 42, said point being located in the centerline of Galdi Lane and continuing from said beginning point the 5 following courses and distances: (1) North 0 degrees 45 minutes 29 seconds West the distance of 60 feet to a point; thence (2) North 87 degrees 14 minutes 31 seconds East the distance of 112.33 feet to a point; thence (3) South 10 degrees 31 minutes 40 seconds West the distance of 24.68 feet to a point; thence (4) South 0 degrees 45 minutes 29 seconds East the distance of 35.80 feet to a point; thence (5) South 89 degrees 14 minutes 31 seconds West the distance of 107.50 feet to a point in the centerline of Galdi Lane, being the first mentioned point and place of beginning.

BEING Lot No. 42

Being known as No. 12802 Galdi Lane.

Being the same premises which Fredavid Greenberg and Arthur H. Kaplan, Co-Partners by Deed dated 4/27/1990 and recorded 5/15/1990 in Philadelphia County in Deed Book FHS 1620 Page 243 conveyed unto Bruce D. Lampe and Jeanne Marie Lampe, Husband and Wife, in fee.

And being the same premises which Bruce D. Lampe and Jeanne Marie Lampe by Deed dated 11/30/2000 and recorded 2/9/2001 in Philadelphia County as Document No. 50210860 conveyed unto Jeanne Marie Lampe, in fee. ($1.00 Consideration)

And being the same premises which Jeanne Marie Lampe by Deed dated 7/8/2003 and recorded 8/7/2003 in Philadelphia County as Document No. 50729557 conveyed unto Anil Bhasin and Jeanne Focht-Bhasin, husband and wife, as tenants by the entirety, in fee. ($1.00 Consideration)

# EXHIBIT "C"

VESTING : Specialized Loan Servicing LLC
CURRENT UPB: $156,601.98
INTEREST ADVANCE: $13,705.01
ADMIN FEES: $0.00
ESCROW ADVANCE: $9,851.42
CORPORATE ADVANCES PAID: $230.07
CORPORATE ADVANCES UNPAID: $0.00
CAPITALIZED AMOUNT: $23,786.50
NEW PRINCIPAL BALANCE: $180,388.48
SPOC: Parnee
TELLER ID: 30702

---

**[Space Above This Line For Recording Data]**

# MODIFICATION AGREEMENT

Borrower ("I"): JEANNE FOCHT-BHASIN whose address is 12802 GALDI LN, PHILADELPHIA, PA 19154 ("Borrower").

If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"): Specialized Loan Servicing LLC a whose principal place of business and mailing address is 6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See Original Instrument, of the Records of Philadelphia County, PA and Note ("Note"): 11/05/2011

Loan Number: ▮

Property Address ("Property"): 12802 GALDI LANE, PHILADELPHIA, PA 19154

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.   Property Type: Single Family
C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));
E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
G.   If my workout required a trial period plan, I have made or will make all payments required under a trial period plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
B.   I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 08/01/2022 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 09/01/2022.

A.   The new Maturity Date will be: 08/01/2062.
B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges in addition to any fees or costs that have been or will be incurred in connection with enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action, as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $180,388.48 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 3.875% will begin to accrue on the New Principal Balance as of 08/01/2022 and the first new monthly payment on the New Principal Balance will be due on 09/01/2022. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|--------------|---------------------------|----------------------------|-------------------------------|------------------------|-------------------|----------------------------|
| 1-40 | 3.875 % | 08/01/2022 | $739.95 | $599.43 | $1,339.38 | 09/01/2022 | 480 |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on 09/01/2022 and continuing thereafter on the same day of each succeeding month.

I will make these payments every month per the above payment schedule  At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.  Your initial monthly escrow payment will be $599.43.  Your initial total monthly payment will be $1,339.38.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.    If on the  08/01/2062, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.    Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.     That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.     That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.     That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan (if required for this modification) and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By:      _____ (Seal)
Name:      Ami McKernan
Its:      Second Assistant VP
Date:      AUG 2 2 2022

_____
JEANNE FOCHT-BHASIN                                    Date:   August 5, 2022

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, Trustee if the                    _____Trust instrument dated
_____, for the benefit of                    _____(Borrower)

# EXHIBIT "D"

Receipt#:

Records Department    Doc Code: A

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:                    When Recorded Mail To:
**JULIO ESTRADA**                             **FIRST AMERICAN TITLE COMPANY**
**BANK OF AMERICA**                           **1795 INTERNATIONAL WAY**
**MC:**                                       **IDAHO FALLS, ID 83402**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**
**(800) 444-4302**
**Tax/Parcel #:  N/A**

# ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is **1901 E. Voorhees St., Suite C, Danville, IL 61834; and P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063**, and its successors and assigns all its right, title and interest in  and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**
Mortgagor(s): **ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE**
Date of Mortgage: **NOVEMBER 5, 2011**
Original Loan Amount: **$188,000.00**
Property Address: **12802 GALDI LANE, PHILADELPHIA, PENNSYLVANIA 19154**

Recorded on **NOVEMBER 14, 2011** in **INSTRUMENT NO. 52411806**        **AND RE-RECORDED ON DECEMBER 15, 2011 IN INSTRUMENT NO. 52424309** of the official Records of **PHILADELPHIA COUNTY**, State of **PENNSYLVANIA**.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Page 1



**MERS Phone#: (888) 679-6377**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
_January 23, 2019_
Date

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**

By: _Alexandra Monegro_            **ALEXANDRA MONEGRO**
(Signature)                        **ASSISTANT VICE PRESIDENT**


I hereby certify that the correct address of the assignee is: **1800 TAPO CANYON ROAD, SIMI VALLEY,
CA 93063**

_Alexandra Monegro_                    Alexandra Monegro
(signature)                            Attest (Print Name)

_____MLC_____ [Space Below This Line for Acknowledgments] _____
STATE/~~COMMONWEALTH~~ OF    **FLORIDA**
COUNTY OF ___**HILLSBOROUGH**___

On    this,    the    **23ᵈ** day    of    _JANUARY_____,    20 **19**,    before    me
____**Martha Lucia Correa**_____,    the    undersigned    officer,    personally    appeared    **ALEXANDRA
MONEGRO**, who acknowledged himself/herself to be the **ASSISTANT VICE PRESIDENT** of
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**, a company, and that he/she as
such **ASSISTANT VICE PRESIDENT** being authorized to do so, executed the foregoing instrument for the
purposes therein contained by signing the name of the company by himself/herself as **ASSISTANT VICE
PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

Personally Known ✓ OR Produced Identification _N/A_

Type of identification produced: _N/A_

_____
Notary Public

Printed Name: _____**Martha Lucia Correa**
                    **1/26/2019**
My commission expires: _____

> MARTHA LUCIA CORREA
> Notary Public, State of Florida
> Commission# FF 192644
> My comm. expires Jan. 26, 2019

Page 2

MERS Phone#: (888) 679-6377

## EXHIBIT A

BORROWER(S): ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE

LOAN NUMBER: ████████████

LEGAL DESCRIPTION:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE IN CITY OF PHILADELPHIA, COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED ACCORDING TO PLAN ENTITLED "AS-BUILT PLAN LIBERTY SQUARE" MADE BY REUBAN HORLICK BUILDERS, INC., DATED 12/11/1989 AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE DIVIDING LINE BETWEEN LOTS 41 AND 42, SAID POINT BEING LOCATED IN THE CENTERLINE OF GALDI LANE AND CONTINUING FROM SAID BEGINNING POINT THE 5 FOLLOWING COURSES AND DISTANCES:
(1) NORTH 0 DEGREES 45 MINUTES 29 SECONDS WEST THE DISTANCE OF 60 FEET TO A POINT; THENCE (2) NORTH 87 DEGREES 14 MINUTES 31 SECONDS EAST THE DISTANCE OF 112.33 FEET TO A POINT; THENCE (3) SOUTH 10 DEGREES 31 MINUTES 40 SECONDS WEST THE DISTANCE OF 24.68 FEET TO A POINT; THENCE (4) SOUTH 0 DEGREES 45 MINUTES 29 SECONDS EAST THE DISTANCE OF 35.80 FEET TO A POINT; THENCE (5) SOUTH 89 DEGREES 14 MINUTES 31 SECONDS WEST THE DISTANCE OF 107.50 FEET TO A POINT IN THE CENTERLINE OF GALDI LANE, BEING THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

BEING LOT NO. 42

BEING KNOWN AS NO. 12802 GALDI LANE.

BEING THE SAME PREMISES WHICH FREDAVID GREENBERG AND ARTHUR H. KAPLAN, CO-PARTNERS BY DEED DATED 4/27/1990 AND RECORDED 5/15/1990 IN PHILADELPHIA COUNTY IN DEED BOOK FHS 1620 PAGE 243 CONVEYED UNTO BRUCE D. LAMPE AND JEANNE MARIE LAMPE, HUSBAND AND WIFE, IN FEE.

AND BEING THE SAME PREMISES WHICH BRUCE D. LAMPE AND JEANNE MARIE LAMPE BY DEED DATED 11/30/2000 AND RECORDED 2/9/2001 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 50210860 CONVEYED UNTO JEANNE MARIE LAMPE, IN FEE. ($1.00 CONSIDERATION)

AND BEING THE SAME PREMISES WHICH JEANNE MARIE LAMPE BY DEED DATED 7/8/2003 AND RECORDED 8/7/2003 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 50729557

MERS Phone#: (888) 679-6377

CONVEYED UNTO ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE, AS
TENANTS BY THE ENTIRETY, IN FEE. ($1.00 CONSIDERATION)

ALSO KNOWN AS: 12802 GALDI LANE, PHILADELPHIA, PENNSYLVANIA 19154

MERS Phone#: (888) 679-6377

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:
**MELISSA TAYLOR**
**FIRST AMERICAN MORTGAGE SOLUTIONS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**
**(208) 528-9895**
**Tax/Parcel #: N/A**

When Recorded Mail To:
**FIRST AMERICAN MORTGAGE SOLUTIONS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

## ASSIGNMENT OF MORTGAGE

For Value Received, **BANK OF AMERICA, N.A., BY FIRST AMERICAN MORTGAGE SOLUTIONS, LLC, AS ATTORNEY-IN-FACT**, the undersigned holder of a Mortgage (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634**, does hereby grant, sell, assign, transfer and convey, unto **SPECIALIZED LOAN SERVICING LLC** (herein "Assignee"), whose address is **6200 S. QUEBEC ST, GREENWOOD VILLAGE, CO 80111.**

A certain Mortgage dated **NOVEMBER 5, 2011** having been given to secure payment of **$188,000.00**, which Mortgage is recorded on **NOVEMBER 14, 2011** in **INSTRUMENT NO. 52411806**     **AND RE-RECORDED ON DECEMBER 15, 2011 IN INSTRUMENT NO. 52424309 of the official Records of PHILADELPHIA COUNTY** , State of **PENNSYLVANIA**, made and executed by **ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE**, to and in favor of original lender, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**, upon the following property located at **12802 GALDI LANE, PHILADELPHIA, PENNSYLVANIA 19154** and situated in **PHILADELPHIA County**, State of **PENNSYLVANIA**.

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**APR 1 8 2022**

Date

I hereby certify that the correct address of the assignee is:
6200 S. QUEBEC ST, GREENWOOD VILLAGE, CO 80111

BANK OF AMERICA, N.A., BY FIRST AMERICAN MORTGAGE SOLUTIONS, LLC, AS ATTORNEY-IN-FACT

By: _____ (Signature)

**Rachel D Norah**

POA RECORDED ON JANUARY 9, 2018 IN
INSTRUMENT NO. 53312824

(signature)

_____ (Print Name)
VICE PRESIDENT

**Rachel D Norah**

Attest (Print Name)

_____ [Space Below This Line for Acknowledgments] _____

**STATE/COMMONWEALTH OF TEXAS**
**COUNTY OF DALLAS**

On   this,   the   _18_   day   of   _April_,   20_22_,   before   me
**Teresa M Robinson**,   the   undersigned   officer,   personally   appeared
**Rachel D Norah**_____, who acknowledged himself/herself to be the **VICE**
**PRESIDENT**   of **FIRST AMERICAN MORTGAGE SOLUTIONS, LLC AS**
**ATTORNEY-IN-FACT FOR BANK OF AMERICA, N.A.**, a company, and that he/she
as such **VICE PRESIDENT** being authorized to do so, executed the foregoing instrument
for the purposes therein contained by signing the name of the company by himself/herself as

**VICE PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

_____

Notary Public

Printed Name: _____**Teresa M Robinson**

My commission expires: __09-03-2024__

Teresa M Robinson
My Commission Expires
09/03/2024
ID No. 132659611

Page 2

**EXHIBIT A**

BORROWER(S): ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE

LOAN NUMBER:

LEGAL DESCRIPTION:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE IN CITY OF PHILADELPHIA. COUNTY OF PHILADELPHIA, AND COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED ACCORDING TO PLAN ENTITLED "AS-BUILT PLAN LIBERTY SQUARE" MADE BY REUBAN HORLICK BUILDERS, INC., DATED 12/11/1989 AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE DIVIDING LINE BETWEEN LOTS 41 AND 42, SAID POINT BEING LOCATED IN THE CENTERLINE OF GALDI LANE AND CONTINUING FROM SAID BEGINNING POINT THE 5 FOLLOWING COURSES AND DISTANCES: (1) NORTH 0 DEGREES 45 MINUTES 29 SECONDS WEST THE DISTANCE OF 60 FEET TO A POINT; THENCE (2) NORTH 87 DEGREES 14 MINUTES 31 SECONDS EAST THE DISTANCE OF 112.33 FEET TO A POINT; THENCE (3) SOUTH 10 DEGREES 31 MINUTES 40 SECONDS WEST THE DISTANCE OF 24.68 FEET TO A POINT; THENCE (4) SOUTH 0 DEGREES 45 MINUTES 29 SECONDS EAST THE DISTANCE OF 35.80 FEET TO A POINT; THENCE (5) SOUTH 89 DEGREES 14 MINUTES 31 SECONDS WEST THE DISTANCE OF 107.50 FEET TO A POINT IN THE CENTERLINE OF GALDI LANE, BEING THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

BEING LOT NO. 42

BEING THE SAME PREMISES WHICH FREDAVID GREENBERG AND ARTHUR H. KAPLAN, CO-PARTNERS BY DEED DATED 4/27/1990 AND RECORDED 5/15/1990 IN PHILADELPHIA COUNTY IN DEED BOOK FHS 1620 PAGE 243 CONVEYED UNTO BRUCE D. LAMPE AND JEANNE MARIE LAMPE, HUSBAND AND WIFE, IN FEE.

AND BEING THE SAME PREMISES WHICH BRUCE D. LAMPE AND JEANNE MARIE LAMPE BY DEED DATED 11/30/2000 AND RECORDED 2/9/2001 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 50210860 CONVEYED UNTO JEANNE MARIE LAMPE, IN FEE. ($1.00 CONSIDERATION)

AND BEING THE SAME PREMISES WHICH JEANNE MARIE LAMPE BY DEED DATED 7/8/2003 AND RECORDED 8/7/2003 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 50729557 CONVEYED UNTO ANIL BHASIN AND JEANNE FOCHT-BHASIN, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY, IN FEE. ($1.00 CONSIDERATION)

ALSO KNOWN AS: 12802 GALDI LANE, PHILADELPHIA, PENNSYLVANIA 19154

Page 3

eRecorded in Philadelphia PA Doc Id: 54301179
05/20/2024 08:20 AM Page 1 of 3 Rec Fee: $242.75
Receipt#: [redacted]
Records Department Doc Code: A

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway Suite 100
St. Petersburg, FL 33716
(239) 351-2442

Space above for Recorder's use

[redacted]

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPECIALIZED LOAN SERVICING LLC**, whose address is **6200 S QUEBEC ST, GREENWOOD VILLAGE, CO 80111**, (ASSIGNOR), does hereby grant, assign and transfer to **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE OF THE FREDDIE MAC SLST 2023-1 PARTICIPATION INTEREST TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **11/5/2011**
Original Loan Amount: **$188,000.00**
Executed by (Borrower(s)): **ANIL BHASIN & JEANNE FOCHT-BHASIN**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR ARRAY FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **52411806** in the Recording District of **Philadelphia**, PA, Recorded on **11/14/2011. THIS SECURITY INSTRUMENT WAS RE-RECORDED ON 12/15/2011 AS INSTR# 52424309, IN THE CLERK'S OFFICE OF PHILADELPHIA, PA, TO INCLUDE THE LEGAL DESCRIPTION.**

Legal Description & Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **12802 GALDI LANE, PHILADELPHIA, PENNSYLVANIA 19154**

[redacted]

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **APR 2 5 2024**

**SPECIALIZED LOAN SERVICING LLC, BY SELENE FINANCE LP, ITS ATTORNEY-IN-FACT**

By: **MATTHEW WYLIE**
Title: **AUTHORIZED SIGNER**

Witness Name: **FREDRICKA GREEN**

POA Batch#13502
POA was recorded in Philadelphia PA on
5/15/2024 Inst#54299874

I hereby certify the precise address of the within named **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE OF THE FREDDIE MAC SLST 2023-1 PARTICIPATION INTEREST TRUST** (*Assignee*) *is* **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**.

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of      **TEXAS**
County of    **DALLAS**

On     **APR 2 5 2024**                , before me, **KRISTIAN MONIQUE PENN**, a Notary Public, personally appeared **MATTHEW WYLIE, AUTHORIZED SIGNER** of/for **SELENE FINANCE LP, AS ATTORNEY-IN-FACT FOR SPECIALIZED LOAN SERVICING LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify MATTHEW WYLIE, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **KRISTIAN MONIQUE PENN**
My commission expires: **10/06/2024**

KRISTIAN MONIQUE PENN
Notary Public, State of Texas
Comm. Expires 10-06-2024
Notary ID 132713991

## EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania, bounded and described according to Plan entitled "As-Built Plan Liberty Square" made by Reuban Horlick Builders, Inc., dated 12/11/1989 as follows, to wit:

BEGINNING at a point in the dividing line between Lots 41 and 42, said point being located in the centerline of Galdi Lane and continuing from said beginning point the 5 following courses and distances: (1) North 0 degrees 45 minutes 29 seconds West the distance of 60 feet to a point; thence (2) North 87 degrees 14 minutes 31 seconds East the distance of 112.33 feet to a point; thence (3) South 10 degrees 31 minutes 40 seconds West the distance of 24.68 feet to a point; thence (4) South 0 degrees 45 minutes 29 seconds East the distance of 35.80 feet to a point; thence (5) South 89 degrees 14 minutes 31 seconds West the distance of 107.50 feet to a point in the centerline of Galdi Lane, being the first mentioned point and place of beginning.

BEING Lot No. 42

Being known as No. 12802 Galdi Lane.

Being the same premises which Fredavid Greenberg and Arthur H. Kaplan, Co-Partners by Deed dated 4/27/1990 and recorded 5/15/1990 in Philadelphia County in Deed Book FHS 1620 Page 243 conveyed unto Bruce D. Lampe and Jeanne Marie Lampe, Husband and Wife, in fee.

And being the same premises which Bruce D. Lampe and Jeanne Marie Lampe by Deed dated 11/30/2000 and recorded 2/9/2001 in Philadelphia County as Document No. 50210860 conveyed unto Jeanne Marie Lampe. in fee. ($1.00 Consideration)

And being the same premises which Jeanne Marie Lampe by Deed dated 7/8/2003 and recorded 8/7/2003 in Philadelphia County as Document No. 50729557 conveyed unto Anil Bhasin and Jeanne Focht-Bhasin, husband and wife, as tenants by the entirety, in fee. ($1.00 Consideration)

### Assignment Chain

| | |
|---|---|
| Assigned From: | BANK OF AMERICA, N.A. |
| To: | SPECIALIZED LOAN SERVICING LLC |
| AOM Recording Details: | Recorded 04/19/2022; Book: N/A; Page: N/A; Instrument: 54026062 |

# EXHIBIT "E"

L.B.F. 3015.1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In re: | Bhasin, Anil K | Chapter | 13 |
| | Focht-Bhasin, Jeanne | Case No. | **25-12648** |
| | Debtor(s) | | |

## Chapter 13 Plan

❑ Original
☑ **Second** Amended

Date: **11/06/2025**

## THE DEBTOR HAS FILED FOR RELIEF UNDER
## CHAPTER 13 OF THE BANKRUPTCY CODE

## YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

## IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
## MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
## NOTICE OF MEETING OF CREDITORS.

| Part 1: | Bankruptcy Rule 3015.1(c) Disclosures |
|---|---|

❑ Plan contains non-standard or additional provisions – see Part 9

❑ Plan limits the amount of secured claim(s) based on value of collateral and/or changed interest rate – see Part 4

❑ Plan avoids a security interest or lien – see Part 4 and/or Part 9

| Part 2: | Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE* |
|---|---|

§ 2(a) Plan payments (For Initial and Amended Plans):

Total Length of Plan: **60** months.

Total Base Amount to be paid to the Chapter 13 Trustee ("Trustee") **$38,511.00**

Debtor shall pay the Trustee **$620.00** per month for **3** months and then
Debtor shall pay the Trustee **$643.00** per month for the remaining **57** months;

**or**

Debtor shall have already paid the Trustee _____ through month number _____ and

then shall pay the Trustee _____ per month for the remaining _____ months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b)** Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):

**§ 2(c)** Alternative treatment of secured claims:

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d)** Other information that may be important relating to the payment and length of Plan:

**§ 2(e)** Estimated Distribution:

| | | | | |
|---|---|---|---|---|
| A. | Total Administrative Fees (Part 3) | | | |
| | 1. | Postpetition attorney's fees and costs | $ | 3,335.00 |
| | 2. | Postconfirmation Supplemental attorney's fees and costs | $ | 0.00 |
| | | Subtotal | $ | 3,335.00 |
| B. | Other Priority Claims (Part 3) | | $ | 253.67 |
| C. | Total distribution to cure defaults (§ 4(b)) | | $ | 23,992.14 |
| D. | Total distribution on secured claims (§§ 4(c) &(d)) | | $ | 361.79 |
| E. | Total distribution on general unsecured claims(Part 5) | | $ | 6,717.30 |
| | | Subtotal | $ | 34,659.90 |
| F. | Estimated Trustee's Commission | | $ | 3,851.10 |
| G. | Base Amount | | $ | 38,511.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ 5,335.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

**Part 3:     Priority Claims**

**§ 3(a)** Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.

(12/2024)                           2

| Creditor | Proof of Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Cibik Law, P.C. | | Attorney Fees | $3,335.00 |
| Internal Revenue Service | 14 | Taxes or Penalties Owed to Governmental Units | $253.67 |

§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

**Part 4:       Secured Claims**

§ 4(a) Secured Claims Receiving No Distribution from the Trustee:

☐ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

| Creditor | Proof of Claim Number | Secured Property |
|---|---|---|
| ☑ If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law.<br><br>American Heritage Federal Credit Union | 5 | 12802 Galdi Ln Philadelphia, PA 19154-1521 |

§ 4(b) Curing default and maintaining payments

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Proof of Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Selene Finance (Arrearage) | 6 | 12802 Galdi Ln Philadelphia, PA 19154-1521 | $23,992.14 |

§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim

☐ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a) (5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Water Revenue Bureau | 15 | 12802 Galdi Ln Philadelphia, PA 19154-1521 | $361.79 | 0.00% | $0.00 | $361.79 |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☑ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

**§ 4(e) Surrender**

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with _____ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of _____ per month, which represents _____ (*describe basis of adequate protection payment*). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by _____ (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

---

**Part 5:     General Unsecured Claims**

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

*(1)* Liquidation Test *(check one box)*

☐ All Debtor(s) property is claimed as exempt.

☑ Debtor(s) has non-exempt property valued at $ ___5,917.00___ for purposes of § 1325(a)(4) and plan provides for distribution of $ ___6,717.30___ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows *(check one box)*:

☑ Pro rata

☐ 100%

☐ Other (Describe) _____

**Part 6:      Executory Contracts & Unexpired Leases**

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

**Part 7:      Other Provisions**

### § 7(a) General principles applicable to the Plan

(1) Vesting of Property of the Estate **(check one box)**

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan. Debtor shall amend the plan or file an objection should a filed unsecured claim render the Plan unfeasible.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

### § 7(c) Sale of Real Property

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

**Part 8:**     **Order of Distribution**

**The order of distribution of Plan payments will be as follows:**

> **Level 1:** Trustee Commissions*
> **Level 2:** Domestic Support Obligations
> **Level 3:** Adequate Protection Payments
> **Level 4:** Debtor's attorney's fees
> **Level 5:** Priority claims, pro rata
> **Level 6:** Secured claims, pro rata
> **Level 7:** Specially classified unsecured claims
> **Level 8:** General unsecured claims
> **Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent. If the Trustee's compensation rate increases resulting in the Plan becoming underfunded, the debtor shall move to modify the Plan to pay the difference.*

**Part 9:**     **Non Standard or Additional Plan Provisions**

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

**Part 10:**     **Signatures**

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:     **11/06/2025**             **/s/ Michael A. Cibik**

                                        Michael A. Cibik
                                        Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date:                                                   

                                        Anil K Bhasin
                                        Debtor

Date:                                                   

                                        Jeanne Focht-Bhasin
                                        Joint Debtor

# EXHIBIT "F"

| Loan Number | |
|---|---|
| Borrower | Anil K Bhasin |
| Payments in POC (Arrears details) | Principal & interest due is $8,139.45 Prepetition fees due is $277.19; Escrow deficiency is $9387.88; Projected escrow shortage is $3968.69; less funds on hand $280.07 Total prepetition arrearage is $23992.14 |
| Case Number | 25-12648 |
| Filing Date | 6/30/2025 |
| 1st Post Due Date | 7/1/2025 |

| POST-PETITION PAYMENT CHANGES | | | | | | |
|---|---|---|---|---|---|---|
| EFFECTIVE | 07/01/25 | | | | | |
| AMOUNT | 1533.67 | | | | | |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments |
|---|---|---|---|---|---|---|
| | | | | 0.00 | | |
| 7/22/2025 | 1097.00 | | 1097.00 | 1097.00 | | |
| 8/13/2025 | 1097.00 | 1533.67 | (436.67) | 660.33 | 7/1/2025 | |
| 9/30/2025 | 1097.00 | 1533.67 | (436.67) | 223.66 | 8/1/2025 | |
| 10/31/2025 | 1097.01 | | 1097.01 | 1320.67 | | |
| | | | 0.00 | 1320.67 | | |
| | | | 0.00 | 1320.67 | | Next due 09/01/2025 |
| | | | 0.00 | 1320.67 | | |
| | | | 0.00 | 1320.67 | | |
| | | | 0.00 | 1320.67 | | |

| Arrears Due: | 9/1/2025 | 1533.67 |
|---|---|---|
| | 10/1/2025 | 1533.67 |
| | 11/1/2025 | 1533.67 |
| | | |
| Less suspense: | | (1320.67) |
| TOTAL: | | $3,280.34 |

11/7/25, 4:27 AM                                    Director℠

## Payoff Calculation Totals (PAY4/PG1)

```
              AS-OF 11/07/25  PAYOFF CALCULATION TOTALS 11/06/25  04:27:52
       NAME J  FOCHT-BH CONTACT NAME JEANNE FOCHT-BHASIN
       ---------------------------------------------------------------------
       PRINCIPAL BALANCE        176,242.66       ---------- RATE CHANGES ----------
       INTEREST 11/07/25          8,079.94       INT FROM    RATE        AMOUNT
       PRO RATA MIP/PMI                 .00      09/01/24   3.87500      8,079.94
       ESCROW ADVANCE            14,435.76       11/07/25
       ESCROW BALANCE                   .00
       SUSPENSE BALANCE           2,474.06-
       HUD BALANCE                      .00
       REPLACEMENT RESERVE              .00
       RESTRICTED ESCROW                .00
       TOTAL-FEES                    15.00
       ACCUM LATE CHARGES           590.94
       ACCUM NSF CHARGES            550.00
       OTHER FEES DUE                   .00
       PENALTY INTEREST                 .00
       FLAT/OTHER PENALTY FEE           .00      TOTAL INTEREST           8,079.94
       CR LIFE/ORIG FEE RBATE           .00      TOTAL TO PAYOFF        203,015.47
       RECOVERABLE BALANCE        5,575.23  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                                 TOTAL PAGE 2                  .00

       ---------------------------------------------------------------------
```

11/7/25, 4:28 AM                                    Director℠

## Payoff Calculation Totals (PAY4/PG2)

```
              AS-OF 11/07/25  PAYOFF CALCULATION TOTALS 11/06/25  04:28:08
       NAME J  FOCHT-BH CONTACT NAME JEANNE FOCHT-BHASIN
       ---------------------------------------------------------------------
       RREM DEFERRED FEE                .00      ******** INFORMATION ONLY *********
       COST RECAPTURE DUE               .00      AMOUNTS INCLUDED IN PAYOFF ELEMENTS
       ---- PMT DEFERRED BALANCES DUE ----       RREM DEFERRED INT                 .00
       PMT DEFERRED PRIN                .00
       PMT DEFERRED INT                 .00      ***********************************
       PMT DEFERRED ESC ADV             .00
       PMT DEFERRED CORP AD             .00
       PMT DEFERRED FEE                 .00




                                            TOTAL PAGE 1            203,015.47
                                                    PAGE 2                  .00
                                            TOTAL TO PAYOFF         203,015.47

       ---------------------------------------------------------------------
```

**EXHIBIT "G"**

| Fill in this information to identify your case and this filing: | | | |
|---|---|---|---|
| Debtor 1 | **Anil** | **K** | **Bhasin** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Jeanne** | | **Focht-Bhasin** |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | | **Eastern** | District of **Pennsylvania** |
| Case number | **25-12648** | | |

☐ Check if this is an amended filing

## Official Form 106A/B

## Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

   1.1  **12802 Galdi Ln**
   Street address, if available, or other description

   **Philadelphia, PA 19154-1521**
   City        State        ZIP Code

   **Philadelphia**
   County

   **What is the property?** Check all that apply.
   ☑ Single-family home
   ☐ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other _____

   **Who has an interest in the property?** Check one.
   ☐ Debtor 1 only
   ☐ Debtor 2 only
   ☑ Debtor 1 and Debtor 2 only
   ☐ At least one of the debtors and another

   Other information you wish to add about this item, such as local property identification number: _____

   **Source of Value:** **Zillow 421,000 less 20% closing cost**

   Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

   Current value of the entire property?        Current value of the portion you own?
   **$336,800.00**                              **$336,800.00**

   **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

   **Tenants by the Entirety**

   ☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** .................................................➔   $336,800.00

### Part 2:    Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ☑ Yes

Debtor **Bhasin, Anil K; Focht-Bhasin, Jeanne**     Case number *(if known)* **25-12648**

3.1 Make: **Ford**

Who has an interest in the property? Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Model: **F150**

Year: **2011**

Approximate mileage: **285000**

☐ **Check if this is community property** (see instructions)

Other information:

Source of Value: KBB

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? **$1,075.00**

Current value of the portion you own? **$1,075.00**

If you own or have more than one, describe here:

3.2 Make: **Suzuki**

Who has an interest in the property? Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Model: **SX4**

Year: **2011**

Approximate mileage: **87000**

☐ **Check if this is community property** (see instructions)

Other information:

Source of Value: KBB

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? **$3,427.00**

Current value of the portion you own? **$3,427.00**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here .................................................... ➔  **$4,502.00**

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own? Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**

*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes. Describe. .........

Various used pieces of furniture, furnishings, appliances, linens, and other similar items, each valued at $600 or less.

**$400.00**

7. **Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
☑ Yes. Describe. .........

Various used televisions, mobile devices, and computers, each valued at $600 or less.

**$300.00**

Official Form 106A/B     Schedule A/B: Property     page **2**